IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


EVERRETT KEITH THOMAS      :          CIVIL ACTION
                                 :          NO.  11-6799
                 v.             :
                                 :
SCI-GRATERFORD, et. al.          :

O'NEILL, J.                                                  February 12, 2014


## MEMORANDUM

Plaintiff Everett Thomas sued defendants Corrections Officer McCormack, Lieutenant Everding, Unit Manager Golden, Unit Counselor Feingold, and John Doe 1 pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights.[1]  Presently before me is defendants' motion for summary judgment and plaintiff's response thereto.  For the following reasons, I will grant defendants' motion.

## BACKGROUND

Plaintiff asserts that defendants violated his constitutional rights by exposing him to harmful prison conditions and denying him access to his attorney and the courts.  Dkt. No. 38 at ¶¶ 28-50; id. at 51-64.  From September 20, 2011 until November 4, 2011, Thomas was an inmate at SCI Graterford.  Dkt. No. 38 at ¶ 10.  He was held in Housing Unit E, a transitional cell block for parole violators, new receptions and inmates awaiting classification, while he awaited a violation of parole hearing.  Feingold Dep. 12:15-13:4; Dkt. No. 43 at 2.

---

[1]    Originally plaintiff named the Pennsylvania Department of Corrections, SCI-Graterford and Michael Wenerowicz, Superintendent at SCI Graterford as defendants in this action.  Dkt. No. 4.  Plaintiff's amended complaints removed these three defendants from the complaint and added defendants McCormack, Everding, Golden, Feingold and John Doe.  Dkt. No. 16; 38.

The parties agree that Thomas filed two grievance letters concerning the conditions of his confinement on September 29, 2011 and October 3, 2011.  Dkt. No. 43-7; Dkt. No. 43-8. Thomas contends that when he arrived his cell had not been cleaned after the previous inmate vacated it and that he was denied cleaning materials to clean it himself.  Dkt. No. 38 at ¶ 48. Thomas also asserts that his cell was contaminated by lead paint, infested by insects that bit him, rodents that left fecal matter in his boots and bed linen, and black mold that caused him respiratory problems.   Dkt. No. 38 at ¶¶ 14, 33-34, 39, 46-50.  He states that on one occasion he found mouse feces in the food on his lunch tray and that his subsequent request for a different, untainted tray was denied.  Dkt. No. 38 at ¶¶ 43-44.  Thomas also asserts that he was prevented from showering while on Cell Block E.  Dkt. No. 43 at 7.  Defendants do not contradict Thomas's claims about the conditions of his confinement, stating "[a]dmittedly those conditions may have been uncomfortable and unpleasant for Thomas."  Dkt. No. 41 at 10.  Thomas alleges that these conditions violate his Eighth Amendment right to humane conditions of confinement. Dkt. No. 43 at 6-9.

Thomas also asserts a violation of his First Amendment right to access the courts, claiming that defendants denied him the opportunity to call his attorney and to visit the Graterford law library in advance of his scheduled October 11, 2011 parole violation hearing. Dkt. No.  38 at ¶ 51-64.  In order for Graterford inmates to speak to those outside the prison by telephone inmates must request that individuals be placed on their telephone list.  Dkt. No. 38 at ¶ 54.  Thomas states that he was prevented from placing his attorney on his call list because of a policy prohibiting 1-800 numbers on inmate call lists.  Thomas Dep. 49:8-12.  Thomas claims that as a result of this policy and defendants' unwillingness to allow him to call his attorney from the counselor's office he was prevented from accessing his attorney until immediately prior to

his hearing.  Dkt. No. 38 at ¶ 61.  Additionally, Graterford inmates have access to a law library after they have been medically cleared to use it.  Golden Dep. 66:1-25.  Thomas claims that he was denied access to the law library even after he had been medically cleared and was therefore prevented from adequately preparing for his hearing.  Dkt. No. 43 at 11.  Because defendants do not contradict these claims either I will accept Thomas's assertions as true and find that there is no material issue of fact as to the conditions of his confinement.

In their motion for summary judgment defendants argue that Thomas cannot establish an Eighth Amendment violation because neither the alleged conditions of confinement that he claims he endured for fourteen days while on cell block E, nor Thomas's alleged inability to shower for fourteen days, are sufficient to constitute deprivation of basic human needs.  Dkt. No. 41 at 10-11.  Additionally, defendants claim that the missed lunch meal that resulted from mouse feces on his tray does not rise to the level of a constitutional violation because Thomas had dinner that same day.  Id. at 12.  However, defendants make no mention of Thomas' allegation of insect infestation or the bites and scars that the insects allegedly caused him in their motion for summary judgment.  Dkt. No. 41; Dkt. No. 43 at 8.

Defendants also argue that Thomas was not denied access to the courts because though he was prevented from using his attorney's 1-800 phone number Thomas was able to communicate by letter, he would have been permitted to use an approved telephone number and he was able to meet with his attorney in advance of his hearing.  Dkt. No. 41 at 11-13.  Additionally, defendants claim that Thomas was properly denied of use of the law library because he was not medically cleared.  Dkt. No. 41 at ¶ 13.  Defendants assert that the short duration of Thomas' stay on cell block E mitigates against a finding of extreme deprivation, stating "Thomas only lived in those conditions for a brief period of time until he was transferred to a different block," and claiming

3

that Thomas was not exposed to any of these conditions in cell block D when he was transferred. Dkt. No. 41 at 11, 13.

Defendants further contend that they are entitled to qualified immunity from Thomas's claims because even if the conditions Thomas complains of amount to a constitutional violation, defendants would not have been on notice that Thomas was suffering extreme deprivations. Dkt. No. 41 at 13-16.  Defendants also assert that Thomas has failed to exhaust his administrative remedies prior to bringing the present action pursuant to § 1983.  Id. at 41 at 17.

## STANDARD OF REVIEW

Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Celotex, 477 U.S. at 322-23.  If the movant sustains its burden, the nonmovant must set forth facts demonstrating the existence of a genuine dispute. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  A fact is "material" if it might affect the outcome of the case under governing law. Id.

To establish "that a fact cannot be or is genuinely disputed," a party must:

> (A) cit[e] to particular parts of materials in the record, including
> depositions, documents, electronically stored information,
> affidavits or declarations, stipulations (including those made for
> purposes of the motion only), admissions, interrogatory answers,
> or other materials; or

4

> (B) show[ ] that the materials cited do not establish the absence or
> presence of a genuine dispute, or that an adverse party cannot
> produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions.  Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989).  The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the movant.  Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted).

## DISCUSSION

### I.      Exhaustion of Administrative Remedies

Defendants claim they are entitled to summary judgment on plaintiff's § 1983 claims because "[plaintiff] has not shown that he exhausted fully his administrative remedies prior to filling this action . . ."  Dkt. No. 41 at 17-19.  I disagree.

Pursuant to the Prison Litigation Reform Act an inmate may not bring an action with respect to prison conditions under § 1983 until he has exhausted the available administrative remedies.  42 U.S.C. § 1997e (a).  The PLRA also requires that inmates "properly" exhaust administrative remedies, which "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  Woodford v. Ngo, 548 U.S. 81, 90-91 (2006).

The Pennsylvania state prison grievance system consists of three stages: first, the inmate timely submits a written grievance within fifteen days of the incident to the facility manager or

the regional grievance coordinator who responds in writing within ten days; second, the inmate

appeals to intermediate review within ten business days and receives a written response within

ten additional business days; third, the  inmate submits an appeal to the Central Office Review

Committee within fifteen working days and receives a final determination in writing within thirty

days.  Dkt. No. 41 at 17, citing Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 1997)

(additional citations omitted); see also Abraham v. DiGuglielmo, No. 06-0058, 2011 WL

2604730, at *4 (E.D. Pa. June 30, 2011).

        In this case Thomas timely filed two grievances detailing his complaints about the

conditions of his confinement and his access to the courts.  Dkt. No. 43-7; Dkt. No. 43-8.  His

first grievance complains of black mold, a leaking toilet, rodents, denial of a haircut and an

inability to shower.  Dkt. No. 43-7 at 2.  His second grievance complains of a leaking toilet,

black mold, rodent infestation, mouse feces in his cell, denial of access to the law library, denial

of access to counsel, mouse feces on his food tray, denial of access to soap and the presence of

lead paint.  Dkt. No. 43-8 at 2.  Plaintiff asserts that he received no response to either grievance.

Dkt. No. 43 at 14.  Defendants do not dispute that Thomas properly submitted his grievances in

compliance with the Pennsylvania Department of Corrections Policy.  Importantly, this District

has consistently held that where a plaintiff submits a grievance and does not receive a response,

he has exhausted his available administrative remedies.  Brown v. Lewis, 865 F. Supp. 2d. 642,

646-47 (E.D. Pa. 2011); Carter v. Morrison, No. 06-3000, 2007 WL 4233500 (E.D. Pa. Nov. 28,

2007).  Therefore, to the extent that Thomas's claims include those complaints identified in his

two grievance letters, I find that Thomas properly exhausted administrative remedies before

filing the present claim.  Defendants are not entitled to summary judgment on this basis.

However, to the extent that Thomas wishes to litigate problems not mentioned in his grievance

letters through his present complaint about the conditions of his confinement, I find that he has not exhausted his available administrative remedies.

## II.       Constitutional Violations

In order to prevail on his § 1983 claims Thomas must demonstrate that defendants deprived him of a right secured by the U.S. Constitution and that the deprivation was caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).  Since defendants do not dispute that they were acting under color of state law I must only determine whether they caused plaintiff to suffer violations of his constitutional rights.

### a.       Conditions of Confinement

The Eighth Amendment requires prison officials to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must take 'reasonable measures to guarantee the safety of the inmate.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994), quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984).  In order to demonstrate that he has suffered an Eighth Amendment deprivation plaintiff "must establish 'both an objective element – that the deprivation was sufficiently serious – and a subjective element – that a prison official acted with sufficiently culpable state of mind, i.e., deliberate indifference.'" Simpson v. Horn, 25 F. Supp. 2d 563, 570 (E.D. Pa. 1998), quoting Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996) (additional citations omitted).  The Court of Appeals has determined that the relevant test for determining whether a deprivation was sufficiently serious is "whether the conditions alone or in combination deprive the inmates of the minimal civilized measures of life's necessities."  Union Cnty. Jail Inmates v. DiBuono, 713 F.2d 984, 999 (3d Cir. 1983), citing Rhodes v. Chapman, 452 U.S. 337, 346 (1981).

Additionally, deliberate indifference requires a showing that the official knows the inmate faces

a substantial risk of harm and disregards that risk.  See Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001).

In determining the objective component of an Eighth Amendment claim, whether these conditions deprive Thomas of the minimal civilized measure of life's necessities, I must consider the totality of the circumstances of his confinement.  Union Cnty. Jail Inmates v. DiBuono, 713 F.2d 984, 999 (3d Cir. 1993).  "The court is to view the individual facts of each case, including the length of time the inmate is exposed to the conditions at issue." Jones v. Clark, No. 85-3391, 1986 WL 12412 at *4 (E.D. Pa. 1986), citing DiBuono, 713 F.2d. at 1000; Hutto v. Finney, 437 U.S. 678, 686 (1978).  The Supreme Court has emphasized that "the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards.  A filthy cell . . . might be tolerable for a few days and intolerably cruel for weeks or months." Hutto, 437 U.S. at 686-87.

Under the totality of the circumstances in this case I do not find that Thomas has identified conditions of confinement that amount to a constitutional violation.  Though unsanitary conditions may give rise to a § 1983 claim the presence of mice, insects and mold that Thomas describes does not rise to the level of a constitutionally impermissible condition.[2]  Kost v. Kozakiewicz, 1 F.3d 176, 188 (3d Cir. 1993).  Unlike the inmate in Kost who endured an infestation of head and body lice that persisted for approximately 70 days, Thomas was exposed to mice, insects and mold in his cell for no longer than two weeks.  Id. at 182.  See also Walters v. Bosher, No. 10-1505, 2011 WL 252954, at *4 (D. N. J. Jan. 25, 2011), citing Sain v. Wood, 512 F.3d 886, 894 (7th Cir. 2008); Antonelli v. Sheahan, 81 F.3d 1422, 1431 (7th Cir. 1996)

---

[2]     Though neither of Thomas's grievance letters references the insects or the bites they allegedly caused I will consider the issue of an insect infestation for the purposes of determining whether there was a constitutional violation out of an abundance of caution.

("sixteen months of infestation coupled with significant physical harm satisfied the objective component [of Eighth Amendment claim]").  In Walters, the court found that confinement in a room in a halfway house infested with bed bugs for a short period of time was not sufficiently serious to satisfy the objective component of an Eighth Amendment claim, even where the plaintiff suffered bites on his face, earlobe, head and legs.  Similarly, Thomas only reports a single instance of mouse feces in his food and did not habitually miss meals due to contamination.  See e.g. Ramos v. Beard, No. 10-01533, 2012 WL 4972193, at *10 (W.D. Pa. Sept. 7, 2012) (finding that prisoner who only missed four meals did not suffer an Eighth Amendment deprivation).  Though Thomas has presented evidence that he was bitten by insects in his cell I do not find that Thomas has demonstrated an unconstitutional threat to his health and safety.  See Hill v. Smith, No. 05-1724, 2005 WL 2666597, at *7 (M.D. Pa. Oct. 19, 2005) (holding that  mice and cockroaches in the cell are "admittedly uncomfortable conditions [that] . . . do not, by themselves articulate a situation that could be characterized as cruel and unusual punishment").

Further, the denial of cleaning supplies during this two-week period is insufficient to render Thomas's conditions of confinement unconstitutional.  Thomas analogizes his situation to the presence of roaches and rodents in Jackson v. Duckworth, 955 F.2d 21, 22 (7th Cir. 1992), however those conditions of confinement were exacerbated by other conditions that had a mutually enforcing effect to create unconstitutionally unsanitary conditions including "filth, leaking and inadequate plumbing, roaches, rodents, the constant smell of human waste, poor lighting, inadequate heating, unfit water to drink, dirty and unclean bedding, [denial of] toilet paper, rusted out toilets, broken windows . . . drinking water containing small black worms that would eventually turn into small black flies."  Significantly, the allegedly unsanitary conditions

9

that are the subject of Thomas's claim are not similarly exacerbated by other problems with his cell, food or health.[3]  Therefore, I find that the conditions Thomas describes, independently and taken together, are not sufficiently serious to satisfy the objective component of an Eighth Amendment claim.

Having concluded that Thomas has not provided evidence of conditions of confinement that show a substantial risk of serious harm I need not complete an analysis of the subjective component of his Eighth Amendment claim.  Because Thomas has not identified conditions sufficient to amount to a constitutional violation, I find that defendants were not deliberately indifferent to a substantial risk of serious harm.  Therefore, I will grant summary judgment on plaintiff's conditions of confinement claim.

**b.    Access to the Court**

It is well established that prisoners have a First Amendment right to access the courts which requires "access to adequate law libraries or adequate assistance from persons trained in the law."  Allah v. Seiverling, 229 F.3d 220, 224 (3d Cir. 2000).  In order to establish an access to courts claim plaintiff must show that he suffered an actual injury – "that [he] lost a chance to pursue a nonfrivolous or arguable underlying claim" – and that he has "no other remedy that may be awarded as recompense for the lost claim other than in the present denial of access suit." Monroe v. Beard, 536 F.3d 198, 205 (3d. Cir. 2008) (citations omitted).  Importantly, "the actual injury requirement is not met by every type of frustrated legal claim; constitutional protections

---

[3]     In Carty v. Farrelly, 957 F. Supp. 727, 734-741 (D.V.I. 1997), the court evaluated individual conditions of confinement that had a mutually enforcing effect to produce the deprivation of identifiable human needs.  Conditions including five to six persons housed in a single cell with two to three sleeping on the floor, inoperable plumbing systems conveying waterborne disease and vermin infestation, leaky roof, nonfunctional light fixtures and hot water heaters, non-chlorinated drinking water, soiled mattresses, flooding in cells, total infestation of rodents and cockroaches and prisoners with collections of roaches in their cells all combined to create unconstitutionally unsanitary conditions of confinement.

are applied only to a prisoner's direct or collateral attack on his or her sentence, or challenges to prison conditions."  Id. at 354-55; see also Shane v. Fauver, 209 F. App'x 87, 89 (3d Cir. 2006).

      In the present case Thomas asserts that he was denied access to his attorney and to the Graterford law library for two weeks while he was held on E block.  Dkt. No. 43 at 4.  He asserts that he was actually injured by this conduct because he was "unable to speak to his attorney until a few moments before the parole violation hearing began" and was "unable to adequately prepare for the [parole violation hearing] and research and investigate his defense."  Dkt. No. 43 at 11; Dkt. No. 38 at ¶ 62.  I disagree.

      In Shane v. Fauver the Court of Appeals upheld the District Court's order granting summary judgment of plaintiff's access to courts claim because he failed to show an actual injury, finding that parole board litigation is neither a direct or collateral attack on a sentence, or a challenge to prison conditions.  Id. at 89.  In this case, Thomas has also failed to show an actual injury sufficient to establish a violation of his right to access the courts because his parole violation hearing, even if negatively impacted by defendants' conduct, was not a direct or collateral challenge to his sentence nor was it an opportunity to challenge prison conditions.  Therefore, I find that defendants' refusal to permit plaintiff to call his attorney on a 1-800 phone number and access the Graterford law library did not actually injure plaintiff, and therefore does not give rise to a First Amendment access to courts claim.  I will grant summary judgment on Thomas's claim that he was denied access to the courts because plaintiff has not established a constitutional violation resulting in liability pursuant to § 1983.

## III.    Qualified Immunity

      Having concluded that Thomas has not established his Eighth Amendment conditions of confinement claim and his First Amendment access to courts claim defendants need not rely on

qualified immunity to prevail on their motion for summary judgment.  However, because both the Supreme Court and the Court of Appeals have held that the qualified immunity question should be resolved at the earliest moment in litigation in order to "spare a defendant the unwarranted demands customarily imposed upon those dealing with a long drawn out lawsuit," I will complete that analysis here as well.  Sharrar v. Felsing, 128 F.3d 810, 826 (3d Cir. 1997), citing Siegert v. Gilley, 500 U.S. 226, 232 (1991).

"Government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity is "broad in scope and protects 'all but the plainly incompetent or those who knowingly violate the law.'" Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007), citing Couden v. Duffy, 446 F.3d 483, 501 (3d Cir. 2006) (Weis, J., dissenting).  To determine whether an officer is entitled to qualified immunity, the Court must determine whether the officer's conduct violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 194 (2001).  "If the facts, when viewed in the light most favorable to the plaintiff, do not show that the officer violated a constitutional right, then plaintiff's § 1983 claim must fail." Curley, 298 F.3d at 277.  The Court must also ask whether the right was clearly established at the time the officer acted.  Id.  I may address these questions in any order.  Pearson v. Callahan, 555 U.S. 223, 236 (2009).

Because I have found that plaintiff was not subjected to unconstitutional conditions of confinement nor denied access to the courts defendants' conduct does not violate a clearly established statutory or constitutional right.  Therefore defendants are entitled to qualified immunity.  Neither the conditions of Thomas's confinement nor his inability to contact his

attorney on a 1-800 phone number or access the Graterford law library would have caused defendants to believe their refusal or inability to address these problems was a violation of Thomas's clearly established constitutional rights.  Therefore, their conduct was not that of a "plainly incompetent officer or one who "knowingly violate[d] the law."  <u>Curley</u>, 499 F.3d at 206.

An appropriate Order follows.